THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| ROOR INTERNATIONAL BV AND SREAM, INC. **Plaintiffs** | § § § § | |
| v. | § § | Civil Action No. 4:18-cv-735 |
| STINKY'S SMOKE SHOP, LLC AND ANDREW WHITELEY **Defendants** | § § § § | |

## DEFENDANTS' MOTION FOR RULE 11 SANCTIONS

TO THE HONORABLE JUDGE OF SAID COURT:

**COMES NOW** Defendants, Stinky's Smoke Shop, LLC ("**Stinky's**") and Andrew Whiteley ("**Whiteley**") (collectively, "**Defendants**") and file this their "Motion for Rule 11 Sanctions" ("**Motion**") and would respectfully show the Court the frivolous and bad-faith nature of Plaintiffs' actions as follows:

## I.    Introduction

1.    On February 10, 2021, Defendants filed their Motion to Amend Final Pretrial Order ("**Motion**") seeking leave to introduce evidence of Plaintiffs' direct involvement in the marijuana industry and bad-faith, trial-by-ambush litigation tactics for purposes of proving damages under the exceptional circumstances provision of the Lanham Act. This Honorable Court entered an Order on February 17, 2021 giving Plaintiffs until February 23, 2021 to file a response.

2.    On February 19, 2021, instead of addressing the directly relevant and conclusive examples of Plaintiffs' dishonesty and bad-faith litigation tactics, Plaintiffs sought fit to file a

DEFENDANTS' MOTION FOR RULE 11 SANCTIONS

motion seeking Rule 11 sanctions on Defendants and their Counsel, J. Stephen Hunnicutt and the Hunnicutt Law Firm. This motion seeks sanctions for "several transgressions, where the Defendants/Counterclaimants, STINKY'S SMOKE SHOP, LLC and ANDREW WHITELEY are maintaining affirmative defenses and claims which are not warranted under existing law and which lack evidentiary support". *See* Dkt. 165 at 1.

3.      Rather than address several glaring examples of Plaintiffs' dishonesty upon the Court and Defendants, Plaintiffs filed a second motion seeking sanctions in yet another attempt to drive up litigation costs and harass, extort, and intimidate a small-family business as they have done with hundreds of others throughout the United States. Plaintiffs' shockingly frivolous argument boiled down to, "[a]s these allegations are simply not true, the Defendants/Counterclaimants have no evidence to support their averments", referring to Defendants' claims. *See* Dkt. 165 at 2.

4.      Plaintiffs also once again accused Defendants of being "in the cannabis business, and that they are the ones, not the Plaintiffs who are acting contrary to both state and federal criminal statutes, and that they intend to continue to pursue their criminal endeavors by attacking the trademark of the Counter Defendants." *See Id.*

5.      Plaintiffs unreasonably and frivolously sought a second motion for sanctions seeking to re-litigate the Court's Memorandum Opinion and Order where the Court found that there was "no such evidence of egregious conduct and no fraudulent subversion of the judicial process." *See* Dkt 144 at 7. Plaintiffs filed this second wholly inadequate sanctions motion solely for the impermissible purpose of harassment and increasing Defendants' legal expenses in an attempt to extort a settlement.

DEFENDANTS' MOTION FOR RULE 11 SANCTIONS

6.      Plaintiffs' second motion took their frivolous accusations to an unconscionable level. Plaintiffs levied unsupported slanderous accusations of criminal conduct and activity not only on Defendants, but on Defendants' counsel and law firm as well. These actions could only have been done in bad faith in an attempt to pervert the course of justice and attempt to abuse the judicial process. Even more egregiously, Plaintiffs provided no arguments in fact or law as to how Defendants and their counsel are involved in criminal activity other than joke memes from a Facebook page.

7.      Plaintiffs' second motion for sanctions alleged:

a.  "STINKY'S and its owner ANDREW WHIETELY, **and their attorneys** is baseless, as the Defendants have unclean hands, and with unclean hands, they have no right to pursue a claim in equity. **As they are in the business of selling drug paraphernalia for the express purpose of use of marijuana**, they do not have the right to prevail in a claim as they are selling products in violation of the Controlled Substances Act, 21 U.S.C.A. § 863 (West). Therefore, they are not entitled to seek the relief in which they are now seeking for the Court to grant. i.e.: the extreme remedy of cancellation of the ROOR and/or its assignees trademarks." *Id* at 7-8 (emphasis added);

b.  "**notwithstanding their illegal activities, their attorneys have alleged in the Counterclaim that SREAM has violated the Controlled Substances Act** 21 U.S.C. § 863." *Id* at 8 (emphasis added);

c.  "**Here, we have a situation in which a person who has made these serious accusations is the one who is guilty of engaging in the marijuana paraphernalia trade. This is exactly what the Defendants, and their attorneys are doing in this case.**" *Id* at 11(emphasis added);

d.  "Furthermore, SREAM has alleged the defense to the Counterclaim that the Defendants come to court with unclean hands, in that they are in the cannabis business, and that they are the ones, not the Plaintiffs, who are acting contrary to both state and federal criminal statutes, and that they intend to pursue their criminal endeavors by attacking the trademark of the Counter Defendants." *See* Exhibit 1 at 4;

e.  "Even assuming arguendo, that the Counter Defendants did on occasion distribute its waterpipes for use of marijuana (an allegation which is strongly denied)" *Id* at 5;

f.  "WHEREFORE, the Counterclaimants ask this Court to award sanctions against the Defendants/Counterclaimants, for their failure to withdraw their claim in their Counterclaim which alleges that there was an abandonment of Trademark by failure to make lawful use of it." *Id* at 5;

DEFENDANTS' MOTION FOR RULE 11 SANCTIONS

g.  "The Defendants to the Counterclaim have been no less than diligent to assure that they steered well away from marijuana use of SREAM's RooR waterpipes, and SREAM went through a vigorous process in that regard." *Id* at 5-6;

h.  "At the time that the trademark was obtained, Mr. Birzle was manufacturing and distributing to the European market, where the waterpipes were used for mainly tobacco use as well as often, some mixture of marijuana with the tobacco. However, that was 100% legal in Europe. As the use of marijuana is not legal in the United States at that time, it was never the intention to provide waterpipes in the United States for anything other than the use of tobacco." *Id* at 6;

i.  "…Defendants/Counterclaimants have no factual basis to deny that it is continuing to run its business centered around the trade of marijuana products or products made for tobacco which it chooses to use for marijuana use." *Id* at 8-9;

j.  "At this point in time, there is no question that STINKYS, and its owner, ANDREW WHITELEY, at all relevant times, continue to run an illegal operation, in which they market, distributes, sell, and promote the use of STINKYS' products to be consumed with marijuana." *Id* at 9;

k.  "Courts of equity do not permit parties to engage in "the pot calling the kettle black," especially when the proverbial kettle has no soot on it, at all. Here, the Counterclaimant is knee deep in illegal activity…" *Id* at 10;

8.  These types of actions and slanderous, baseless accusations cannot be permitted. Plaintiffs and their counsel violate all sense of fairness and equity, and their actions reek of underhanded gamesmanship. If parties can make accusations of criminal conduct with absolutely no evidence in an attempt to extort a settlement, then our judicial system will be reduced to litigants acting as mobsters attempting to extort undeserved funds from innocent parties under threats of criminal accusations or life-ruining actions.

## II.  <u>MEMORANDUM OF LAW</u>

9.  Rule 11 allows a court to impose sanctions against attorneys, law firms, pro se parties, and, in some cases, represented parties for frivolous or improper pleadings, non-discovery motions, other non-discovery papers, and if a party continued a pursuit of frivolous claims or contentions raised in a pleading or motion after they are no longer tenable. *See*, for example, *Carter v. ALK Holdings, Inc.*, 605 F.3d 1319, 1323 (Fed. Cir. 2010); *Thompson v. RelationServe Media,*

DEFENDANTS' MOTION FOR RULE 11 SANCTIONS

*Inc.*, 610 F.3d 628, 695, n. 94 (11th Cir. 2010); *Ridder*, 109 F.3d at 293; 1993 Advisory Committee Notes to FRCP 11(b) and (c).

10.    FRCP 11 imposes an affirmative duty on an attorney to certify that before filing, submitting, or later advocating to the court in signed documents, the attorney has both conducted a reasonable inquiry and determined that the document is well-grounded in fact, legally tenable, and not presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase litigation costs. *See* FRCP 11(b); *Bus. Guides, Inc. v. Chromatic Commc'ns Enters., Inc.*, 498 U.S. 533, 551 (1991); *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 393 (1990).

11.    An attorney need not act in bad faith to be sanctioned under FRCP 11. The primary determination under FRCP 11 is whether the signing attorney conducted an inquiry into the factual and legal basis of the challenged document that was objectively reasonable under the circumstances. *See Bus. Guides, Inc.*, 498 U.S. at 548-551; *Cruz v. Don Pancho Mkt., LLC*, 171 F. Supp. 3d 657, 667-68 (W.D. Mich. 2016); *Rodgers v. Lincoln Towing Serv., Inc.*, 771 F.2d 194, 205 (7th Cir.1985).

12.    Courts assess the reasonableness of the signing attorney's inquiry by determining whether a competent attorney performing a reasonable investigation could have believed the merit of the factual or legal position in the document. Courts may look to other factors to decide whether the investigation was reasonable, including:

- The complexity of the subject matter.
- The signing attorney's familiarity with the subject matter.
- The time available for investigation.
- The ease or difficulty of access to the requisite information.
- Whether the signing attorney accepted the case from another attorney.
- Whether the signing attorney had to rely on a client for information about the facts underlying the paper.
- Whether the paper was based on a plausible view of the law.

DEFENDANTS' MOTION FOR RULE 11 SANCTIONS

• Whether the challenged contentions are dispositive of the central dispute in the case.

*See CQ Int'l Co., Inc. v. Rochem Int'l, Inc., USA*, 659 F.3d 53, 62 (1st Cir. 2011); *Kaltenbach v. Lynn*, 996 F.2d 306 (5th Cir. 1993); *Century Prods., Inc. v. Sutter*, 837 F.2d 247, 250 (6th Cir. 1988).

13.     A court may sanction any person or entity who violates FRCP 11 or who was responsible for that violation, even if that person or entity did not sign the offending document, including the Parties, the signing attorney, their law firm, and other attorneys in the law firm. Fed. R. Civ. P. 11(c)(1). A court may sanction a represented party depending on the extent of its involvement in litigation management and decisions that resulted in a violation. *See Thompson v. RelationServe Media, Inc.*, 610 F.3d 628, 694 (11th Cir. 2010).

14.     The touchstone of FRCP 11 is deterrence rather than compensation *Saltz v. City of N.Y.*, 129 F. Supp. 2d 642, 647 (S.D.N.Y. 2001). Although both nonmonetary and certain monetary sanctions are available under Rule 11, the court must limit sanctions to what suffices to deter repetition of, or conduct comparable to, the bad conduct. FRCP 11(c)(4).

15.     Under FRCP 11, a court may:

a.  Strike the offending paper, claim, defense, or contention.

b.  Admonish, reprimand, or censure the offending individual or entity.

c.  Require participation in seminars or other educational programs.

d.  Refer the matter to disciplinary authorities or agencies.

e.  Require an offending attorney to read the court's local rules and judge's requirements and acknowledge under the penalty of perjury that the attorney has read them.

(FRCP 11(c)(4); see also, for example, *Franklin v. Pinnacle Entm't, Inc.*, 2013 WL 11235897, at *3-4 (E.D. Mo. Jan. 28, 2013).) In rare circumstances, some courts have also dismissed claims

DEFENDANTS' MOTION FOR RULE 11 SANCTIONS

with prejudice as a sanction under FRCP 11 based on willful misconduct. *See, for example, King v. Fleming*, 899 F.3d 1140, 1148-54 (10th Cir. 2018) (affirming dismissal of all claims with prejudice as a Rule 11 sanction for knowingly submitting a materially altered email and requesting forensic examination for the email despite knowing the email was fraudulent).

16.    Rule 11 also permits a court to impose payment:

    a.    Of a penalty to the court (FRCP 11(c)(4); *Saltz*, 129 F. Supp. 2d at 647).

    b.    To the movant of part or all of the reasonable attorneys' fees and other expenses resulting from the violation, but only if such sanctions are:

        i.    imposed on motion (in other words, a court may not *sua sponte* order payment of reasonable attorneys' fees and expenses under FRCP 11); and

        ii.    warranted for effective deterrence.

*See* FRCP 11(c)(4); 1993 Advisory Committee Notes to FRCP 11(b) and (c); *Dearborn St. Bldg. Assocs.*, 411 F. App'x at 852; *Franklin v. Pinnacle Entm't, Inc.*, 289 F.R.D. 278, 289 (E.D. Mo. 2012), modified in part, 2013 WL 11235897 (E.D. Mo. Jan. 28, 2013); *Loving v. Pirelli Cable Corp.*, 11 F. Supp. 2d 480, 498 (D. Del. 1998), aff'd, 178 F.3d 1279 (3d Cir. 1999).

17.    However, a court generally cannot impose any monetary sanction:

    a.    Against a represented party, if the basis of a sanctions award is a frivolous legal position, as monetary sanctions for this violation are more properly imposed on the party's attorneys.

    b.    On its own, unless it first issues a show cause order before voluntary dismissal or settlement of the claims by or against the party or attorney who the court seeks to sanction.

DEFENDANTS' MOTION FOR RULE 11 SANCTIONS

*See* FRCP 11(c)(5); 1993 Advisory Committee Notes to FRCP 11(b) and (c); *Dearborn St. Bldg. Assoc., LLC*, 411 F. App'x at 852; *Haisha v. Countrywide Bank, FSB*, 2011 WL 3268104, at *2 (E.D. Mich. July 29, 2011).

18.     A court also may award a party who prevails on a Rule 11 motion the reasonable expenses incurred for the motion (including attorneys' fees) (FRCP 11(c)(2)). This provision also allows sanctions against an attorney or party who files a frivolous Rule 11 motion (see, for example, *Hylton v. Anytime Towing*, 2012 WL 3562829, at *3 (S.D. Cal. Aug. 17, 2012)).

## III. <u>Arguments and Authorities</u>

### A.     <u>Plaintiffs' Abuse of Process</u>

19.     An abuse can be found if it is discernable that the purpose of the litigation, itself, was to obtain a benefit which otherwise would be unobtainable. In *Heck v. Humphrey*, the U.S. Supreme Court has held "the gravamen of the tort of abuse of process is not the wrongfulness of a prosecution, but is some extortionate perversion of lawfully initiated process to illegitimate ends." *Heck v. Humphrey*, 512 U.S. 477, 478, 114 S. Ct. 2364, 2368, 129 L. Ed. 2d 383, 389 (1994).

20.     It could not be clearer that Plaintiffs and their counsel are committing the tort of abuse of process. Plaintiffs seek to pervert the legal process to their own illegitimate ends and obtain disproportionately large settlement payments.

21.     In a sanctions order involving a litigation campaign for copyright infringement, a California District Court observed that the Party and their counsel had "discovered the nexus of antiquated [intellectual property] laws, paralyzing social stigma, and unaffordable defense costs. And they exploit this anomaly by accusing individuals of illegally [selling] a single [alleged counterfeit]. Then they offer to settle for a sum calculated to be just below the cost of a bare-bones

DEFENDANTS' MOTION FOR RULE 11 SANCTIONS

defense. For these individuals, resistance is futile; most reluctantly pay rather than have their names associated with [the lawsuit]." *Ingenuity 13 LLC v. Doe*, No. 12-8333, 2013 U.S. Dist. LEXIS 64564 at *1-2 (C.D. Cal. 2013). This analysis is directly applicable in the instant case.

22.     Sream and RooR have filed, and continue to file, hundreds of copycat lawsuits in districts all across the United States. They maintain a strategy designed to make litigation procedurally difficult and burdensome for each of their defendants. First, Plaintiffs' investigators buy an allegedly "counterfeit" product from small, mostly family-run stores who typically have less available financial means to defend themselves than larger enterprises. Then Plaintiffs wait several months to notify the store of the alleged fake in the hopes that the future defendants unsuspectingly sell multiple "fake products" so that Plaintiffs can then extort more money from them. The "notifications" are accompanied with a settlement demand under threat of litigation for what would be an exorbitant price per unit basis. Defendants would note that Plaintiffs' investigators, Rosaire Badger and Sovereign Protection & Investigation, share the same office location as Plaintiffs' counsel, a fact curiously undisclosed by Plaintiffs to Defendants or the Court. *See* Exhibit 2.

23.     Plaintiffs typically demand around $12,000.00 "per store" that sells an allegedly fake RooR product, such as the demand made upon Defendants in the current case. What is notable is that these often-successful demands can sometimes make more money per potential defendant than Plaintiffs would make through legitimate monthly sales otherwise. *See* Exhibit 3.

24.     Plaintiffs have also repeatedly taken actions designed solely to financially harass and bankrupt small businesses in an effort to force settlements. For example, Plaintiffs and their counsel, specifically Jamie Alan Sasson and Peter Ticktin, will file sanctions motions solely intended to increase litigation costs on the other side on the eve of trial or mediation. In one

instance, Plaintiffs were notified that their frivolous lawsuits had virtually bankrupted multiple defendants to the point that they could not afford to attend mediation. Plaintiffs' counsel, Jamie Alan Sasson, then moved for sanctions for the defendant's failure to attend the mediation. *See* Exhibits 4, 5, and 6. What is most egregious about this example is that Plaintiffs were notified that the mediation would not take place due to the defendants' financial situations, yet Plaintiffs' counsel still attended the mediation in an attempt to rack up attorney fee charges. Plaintiffs then tried to overcharge the defendants they had already financially ruined, a request which the Court denied. *See* Exhibit 7.

25.     Not content to simply try and extract more money from defendants who had already been driven to bankruptcy by Plaintiffs' actions, Plaintiffs further sought a sanction to strike the defendant's pleadings and prevent them from introducing evidence at trial. *See* Exhibit 5.

26.     Notably, in *Sream v. Habsa Enterprise, Inc.*, Sream filed the same causes of action as they did in the present case. *Sream, Inc. v. Habsa Enter., Inc.*, No. 16-81662-CIV, 2018 WL 1463655 (S.D. Fla. Jan. 31, 2018). In Sream's response to the defendant's motion for summary judgment, filed on December 18, 2017, Sream stated, "Upon further review of the case law, the Plaintiff concedes that at this time it lacks sufficient evidence to establish standing for Count I and Count II of the Plaintiff's Complaint." *See* Exhibit 8 at 1. Therefore, Plaintiffs were on actual notice and had judicially admitted that they lacked standing to pursue their claims as of **December 2017**, more than nine months before filing the instant case against Stinky's and Whiteley, yet they continued to file their **knowingly frivolous** case against not only the instant defendants but also hundreds of others throughout the United States.

27.     In another case, RooR, Sream, and their counsel, Peter Ticktin, Jamie Alan Sasson, and Chezare Palacios of The Ticktin Law Group filed a motion for sanctions seeking to invoke the

DEFENDANTS' MOTION FOR RULE 11 SANCTIONS

inherent powers of the Court on the basis of being accused of criminal activity. *See* Exhibit 9. In fact, Plaintiffs asserted that the Defendant's attorney and his firm "should be sanctioned for making false accusations against the Plaintiffs, and their attorneys, without any basis in fact to make such an absolute fabrication" *Id.* Plaintiffs also stated that the defendant's counsel "should be sanctioned by the Court for making a false, baseless allegation against fellow lawyers, in which he has absolutely no basis, and no proof to suggest such improper behavior has occurred." *Id.* Although the Court denied the motion, it is significant that Plaintiffs and their counsel have sought sanctions for making false accusations of criminal conduct, the very actions which they have now taken multiple times against Defendants and Defendants' counsel in the instant case. Plaintiffs and their counsel are the proverbial kettle calling the pot black. *See* Exhibit 10.

28.    Plaintiffs' actions clearly constitute a flagrant abuse of the judicial process in order to obtain a secondary income stream in relation to their products. The totality of this case, a well as the hundreds of others where Plaintiffs have only prevailed through defaults or bankrupting the other side into a settlement, clearly shows that Plaintiffs' true goals of litigation is to force lucrative settlements out of small businesses or bankrupt them for daring to defend themselves against Plaintiffs' frivolous claims. Plaintiffs take their egregious actions a step further by increasing litigation expenses as much as they possibly can by filing repeated frivolous sanctions motions to make the idea of paying them off more palatable to small cash-strapped businesses; a tactic that the Plaintiffs' second motion for sanctions clearly represented.

### B.    Plaintiffs' Abandoned Trademarks

29.    Plaintiffs raised claims for trademark infringement and improperly maintained these claims for several years despite knowing that they possessed invalid trademarks. Plaintiffs themselves have admitted to having sold RooR products to marijuana dispensaries and marijuana

DEFENDANTS' MOTION FOR RULE 11 SANCTIONS

themed businesses, as well as RooR Germany and RooR Amsterdam being focused on marijuana use and the marijuana culture yet seek to extort small businesses using invalid trademarks that Plaintiffs knew were fraudulent to begin with.

30.     Plaintiffs' Registration number 2307176 in Class 34 "Smoker's Articles" include "cigarettes, cigars, tobacco pouches, humidors, tobacco spittoons, chewing tobacco, smoking tobacco and matches." *See* Exhibit 11. RooR, Sream, Martin Birzle, and Jay Farraj have all admitted in deposition testimony in other cases that no RooR-branded items in any of these categories have ever been on sale in the United States. *See* Exhibit 12 (Birzle deposition at p. 48, line 12 – p. 49, line 8; Exhibit 13 (Sream 30(b)(6) deposition p. 34, line 9 – p. 35, line 22, p. 44, line 23-p. 45, line 3) and Exhibit 14 (RooR 30(b)(6) deposition p. 36, line 25 – p. 37, line 13, p. 40, line 19 – p. 41, line 16.)). Martin Birzle further admitted that no such RooR tobacco products have ever existed anywhere in the world. In fact, Plaintiffs' own trademark attorney had admitted that the specimens submitted to the USPTO did not show availability or actual use. *See* Exhibit 15 (Bellus deposition p. 11, lines 16-23, p. 13, lines 7-11, p. 13, line 25- p. 14 line 3, p. 15 line 12-16, p. 17 lines 9-16, p. 20 line 25- p. 21 line 4, p. 22 lines 18-20).

31.     Registration No. 3675839 in Class 34 "Smoker's Article's" identified the following goods: "glass pipes, bongs, water pipes, water pipes of glass." *See* Exhibit 16. The USPTO registers tobacco water pipes in Class 34. The RooR brand is not a tobacco brand and the Plaintiffs do not sell tobacco nor tobacco pipes. In fact, Plaintiffs openly and knowingly sell their products to stores which sell marijuana. As such, the goods identified in Registration No. 3675839 have never been in lawful use because RooR water pipes and bongs are not tobacco water pipes and, thus, are unable to receive trademark protection. Further, Plaintiffs openly advertise in and compete in marijuana themed competitions and events, advertise in marijuana themed media such

DEFENDANTS' MOTION FOR RULE 11 SANCTIONS

as magazines, and tout their brand's relationship with B-Real, the self-described "Highest Man in the World", and convicted drug trafficker Dennis Howard Marks who plead guilty to importing multi-ton loads of marijuana and hashish into the United States, and even sell a specialty "commemorative Howard Marks bong". *See* Exhibit 17. This bong includes a "specialty RooR logo" and the size dimensions are similar, if not the exact same, to multiple U.S. RooR products.

32.    Plaintiffs' own trademark attorney stated that their submitted specimens did not show use in commerce and the Plaintiffs provided no evidence of use other than the attorney's same invalid specimens. *See* Exhibit 15.

33.    The overwhelming, objective evidence demonstrates that RooR is a cannabis brand, and its products are primarily intended and designed for consumption of marijuana. As such, Defendants clearly and unmistakably have evidence showing that Plaintiffs' trademarks have been abandoned through failure of lawful use, Plaintiffs are and have been aware of their lack of a valid lawful trademark, and yet Plaintiffs continued to file the instant case to financially extort the Defendants.

34.    Plaintiffs have repeatedly made assertions, under oath, that they do not advertise, endorse, sell, or promote their products for use with marijuana. This is blatantly false as evidenced by their approved "Authorized Dealers" which promote the use of marijuana with their products, including RooR products, and some of which are specifically marijuana dispensaries. Plaintiffs' marijuana selling and endorsing "Authorized Dealers" span across multiple states showing a calculated business plan, not a one-off oversight. Further, Plaintiffs have now repeatedly, without a shred of evidence, accused Defendants and their counsel of engaging in criminal activity despite Plaintiffs knowingly and actively selling their "authorized" products to stores whose main business purpose is to sell marijuana, which is illegal under Texas State and Federal law.

DEFENDANTS' MOTION FOR RULE 11 SANCTIONS

35.     As such, Plaintiffs' request for sanctions was not only frivolous from inception, it is also independently sanctionable as a willful misleading of the Court and Defendants of Plaintiffs' products and business. Further, Plaintiffs' actions were a willful, intentional, and outrageous attempt to force a small business into expending more time and money to defend themselves against Plaintiffs continued slanderous accusations. This is the exact nature of bad faith litigation tactics that Rule 11 is intended to prevent.

### C.     RooR was Intended and Registered as a Marijuana Lifestyle Company

36.     Plaintiffs have admitted through their own court filings that,

> Mr. Birzle was manufacturing and distributing to the European market, where the waterpipes were used for mainly tobacco use as well as often, some mixture of marijuana with the tobacco. However, that was 100% legal in Europe. As the use of marijuana is not legal in the United States at that time, it was never the intention to provide waterpipes in the United States for anything other than the use of tobacco. *See* Dkt. 165 at 5 (emphasis added).

37.     First and foremost, Plaintiffs made a materially false statement to the Court. Marijuana is not "100% legal" in Europe. In fact, marijuana use is illegal in most European nations.[1] It is most notably illegal for recreational use in Germany where Martin Birzle first began the RooR brand.[2]

38.     Simply put, it is ridiculous to claim that a brand designed for "often" use with marijuana suddenly becomes a tobacco-only brand when crossing country lines.

39.     Plaintiffs were correct that the standard is whether RooR knew "at the time" that the goods were primarily intended for drug paraphernalia. There, again, Plaintiffs attempted to throw up a conclusory smokescreen that "[a]s these allegations are simply not true, the Defendants/Counterclaimants have no evidence to support their averments." *See* Dkt. 165 at 5.

---

[1] https://www.emcdda.europa.eu/publications/topic-overviews/content/drug-law-penalties-at-a-glance_en
[2] Schuster, Kathleen (10 March 2018). "5 facts about cannabis laws in Germany"

when filed, Plaintiffs and Plaintiffs' counsel knew as much, and yet they continued to abuse the judicial process by filing it.

D.    Plaintiffs' Unclean Hands Argument is Made in Bad-Faith and is Knowingly Frivolous

43.    As addressed in part in Defendants' Motion to Amend Final Pretrial Order, Plaintiffs' unclean hands argument is meritless and egregiously dishonest. Plaintiffs assert that "[Defendants] are in the business of selling drug paraphernalia for the express purpose of use of marijuana", and that "Defendants/Counterclaimants have no factual basis to deny that it is continuing to run its business centered around the trade of marijuana products", despite the Plaintiffs actively and knowingly selling their products at marijuana dispensaries. *See* Dkt. 165.

44.    Plaintiffs, once again, sought to equate the posting of joke pictures on a Facebook page, which this Court called "a wholly inadequate argument for their request", to actively selling products on the same shelves as actual marijuana. *See* Dkt. 77. Notably, this Court found that "there is no such evidence of egregious conduct and no fraudulent subversion of the judicial process." *Id.*

45.    This is yet another example of a large company attempting to financially strong-arm a small mom-and-pop shop and cause them to expend time and resources fighting frivolous criminal accusations. Simultaneously, Plaintiffs sought to distract from their product's active marijuana dispensary sales. There is a simple and undeniable factual basis for Defendants' claims: Plaintiffs sell their "authorized" products at the same locations where consumers can buy marijuana. Invoices supporting the same have been attached with marijuana dispensaries and businesses catering solely to the marijuana market being highlighted for convenience. *See* Exhibit 19.

DEFENDANTS' MOTION FOR RULE 11 SANCTIONS

46.     Most egregiously, Plaintiffs made their frivolous request for sanctions with an accusation of criminal conduct not only by the Defendants, but also Defendants' counsel. Plaintiffs defy logic, common sense, and all reasonable bounds of professional and equitable conduct by asserting that "there is no question" that Defendants "at all relevant times, continue to run an illegal operation, in which they market, distribute, sell, and promote the use of STINKY'S products to be consumed with marijuana", and that Defendants are "knee deep in illegal activity", while Plaintiffs actively market and sell authorized products through marijuana dispensaries.

47.     Plaintiffs' actions and baseless accusations are clearly an abuse of the judicial system. Plaintiffs sought to accuse an innocent businessman, an innocent business, and officers of the Court of running an <u>active ongoing criminal enterprise</u>. Plaintiffs dropping their motion at trial clearly shows that Plaintiffs knew their motion was frivolous and sought to avoid an adverse ruling. Beyond that, Plaintiffs abused the judicial system by making slanderous accusations of criminal conduct knowing that Defendants would then have to expend more time and money to counter said accusations. Plaintiffs' actions show that they knowingly filed a frivolous, baseless motion for the express purpose of increasing costs and unreasonably expanding the proceedings, a fact made even more obvious by Plaintiffs' decision to withdraw their motion at trial before argument could be heard.

## IV.   <u>Conclusion</u>

48.     Plaintiffs have egregiously and unwaveringly conducted the entire scope of the instant litigation in bad-faith, repeatedly ignored deadlines and Court Orders, have actively and knowingly misrepresented or attempted to obscure relevant, material facts to the Court and Defendants, and have conducted litigation-by-ambush in a naked attempt to increase litigation expenses to the point that they become unbearable to attempt to force Defendants into a settlement

DEFENDANTS' MOTION FOR RULE 11 SANCTIONS

or to force Defendants to simply stop representing themselves and accept a default judgment as Plaintiffs have done in dozens, if not hundreds, of other cases. Plaintiffs further asserted causes of action that they knew at the time of filing were frivolous and had judicially admitted as such. A Court may award sanctions or reasonable expenses when a party abuses the judicial system, and there is no case more compelling for the imposition of such sanctions than Plaintiffs and their counsel's conduct throughout the scope of this litigation. At a minimum, Plaintiffs and their counsel should be ordered to issue a public apology, on the Court's record, apologizing for their baseless, frivolous, and slanderous accusation of criminal conduct.

**WHEREFORE, PREMISES CONSIDERD**, Defendants pray this Honorable Court GRANT Defendants' Motion for Rule 11 Sanctions and impose sanctions on Plaintiffs and Plaintiffs' counsel, Jamie Alan Sasson, Peter Ticktin, and the Ticktin Law Group, award Defendants relief in the form of all costs and fees incurred in the defense and prosecution of the instant matter, and issue a public apology filed with the Court and on public record stating that Defendants nor their counsel are engaged or have ever been engaged in any sort of active criminal enterprise.

Dated March 26, 2021

Respectfully submitted,

THE HUNNICUTT LAW FIRM

J. Stephen Hunnicutt
Lead Attorney
State Bar No. 10279510
Steve@HunnicuttLaw.com
Admin@HunnicuttLaw.com
Tim Robinson
Texas State Bar No. 24064040
Illinois State Bar No. 6324565
Tim@HunnicuttLaw.com
Christian T. Johnson
State Bar No. 24116576

Christian@HunnicuttLaw.com
Kaedan Watts
State Bar No. 24113459
Kaedan@HunnicuttLaw.com
Phone: (214) 361-6740
Facsimile: (214) 691-5099
17330 Preston Rd, Suite 100-A
Dallas, Texas 75252
**ATTORNEYS FOR DEFENDANTS
STINKY'S SMOKE SHOP, LLC AND
ANDREW WHITELEY**

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of this instrument was sent to the following through email on March 26, 2021.

Peter Ticktin
(Florida Bar # 887935) admitted pro hac vice
Jamie Alan Sasson
(Florida Bar #100802) admitted pro hac vice
Chezare Palacios
The Ticktin Law Group, PLLC
270 SW Natura Ave
Deerfield Beach, Florida 33441
jsasson@legalbrains.com
Cpalacios@legalbrains.com

Elahi Law & Mediation Firm, PLLC
Shayan Elahi
13601 Preston Road, Ste. 770E Dallas, TX 75240
Phone: 214-624-5146
Fax: 214-602-8911
shayan@elahilawfirm.com
*Counsel for Plaintiffs*
Admitted in Florida & Texas

J. Stephen Hunnicutt

DEFENDANTS' MOTION FOR RULE 11 SANCTIONS